**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

RE/MAX, LLC

Plaintiff,

v.

BEACHSIDE VENTURES, INC., a California Corporation;
JAMES SANDERS, a California Resident;
JOHN SANDERS, a California Resident;
SANDRA SANDERS, a California Resident; and
MARY DIANE SANDERS, a California Resident

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff RE/MAX, LLC ("RE/MAX") for its Complaint against Defendant Beachside Ventures, Inc. ("Beachside"), Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders (referred to herein as "the Sanders") (collectively with Beachside, "Defendants"), by and through counsel, Polsinelli PC, alleges as follows:

**<u>Nature of the Action</u>**

RE/MAX and Defendants were parties to twelve Franchise Agreements (defined below) pursuant to which Defendants were required to operate and promote the business of RE/MAX franchised offices in Southern California. In connection with each of the Franchise Agreements, the Sanders executed and delivered to RE/MAX a Guaranty and Assumption of Obligations

1

(collectively, the "Guaranties"), pursuant to which the Sanders agreed to be jointly and severally liable to RE/MAX for all of the Defendants' obligations to RE/MAX under the Franchise Agreements. In violation of their contractual obligations under the Franchise Agreements, in January of 2025, Defendants unilaterally abandoned their franchises and, at the same locations at which they had operated their RE/MAX franchises, opened an independent, competing real estate business. In response, RE/MAX was compelled to terminate the Franchise Agreements. Under the Franchise Agreements, in the event of termination Defendants are required to pay RE/MAX what is defined as Lost Future Revenue to compensate RE/MAX for the losses it would suffer because Defendants did not fully perform for the term of the Franchise Agreements; they have not fully performed. Defendants were also required to immediately cease using the RE/MAX Marks and Copyrighted Works (defined below). They have not done so, and they and their former RE/MAX sales associates continue to use them in connection with their real estate business, compounding the harm to RE/MAX. RE/MAX seeks injunctive and monetary relief for direct and contributory acts of trademark counterfeiting, trademark infringement, and unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq*., copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 501 *et seq*., and for breach of contract under Colorado common law.

## The Parties

1.      RE/MAX is a Delaware limited liability company with its principal place of business at 5075 South Syracuse Street, Denver, Colorado 80237.

2.      Upon information and belief, Beachside is a California corporation with its principal place of business at 63 Malaga Cove Plaza, Palos Verdes Estates, California 90274.

3.      Upon information and belief, Defendant James Sanders is a broker and real estate agent with, and Shareholder of, Defendant Beachside.

4.      Upon information and belief, Defendant John Sanders is a broker and real estate agent with, and Shareholder of, Defendant Beachside.

5.      Upon information and belief, Defendant Sandra Sanders is a broker and real estate agent with, and Shareholder of, Defendant Beachside.

6.      Upon information and belief, Defendant Mary Diane Sanders is a real estate agent with, and Shareholder of, Defendant Beachside.

## Jurisdiction and Venue

7.      This action arises under §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 17 U.S.C. § 501 *et seq.* of the U.S. Copyright Act, and Colorado common law.

8.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

9.      This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants agreed in the Franchise Agreements (Exs. C-N, ¶ 15(K)) to this Court's personal jurisdiction over them and that venue was appropriate in this District, and further because Defendants have caused an injury to RE/MAX in this District, as set forth in greater detail below.

10.     This Court further has jurisdiction over Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders because they agreed in the Guaranties executed in connection with the Franchise Agreements (Exs. C-N) to this Court's personal jurisdiction over them.

**Background**

11.     Operating throughout the United States, the RE/MAX franchise network (the
"RE/MAX Network") is a real estate system of independently owned and operated franchised
offices and their affiliated independent contractor/sales associates who are authorized to use the
RE/MAX trademarks in connection with providing real estate brokerage services.

12.     Those affiliated with the RE/MAX Network have provided real estate brokerage
services in interstate commerce in the United States in connection with the RE/MAX and REMAX
word marks, including a stylized form distinguished by "RE/MAX" in all capital letters in red or
blue, accented with a contrasting red or blue diagonal slash, examples of which are set forth below:

     

a service mark consisting of a hot air balloon design, an example of which is set forth below:

                    

and the RE/MAX "for sale" sign design, examples of which are set forth below:

 

 

13.    RE/MAX owns numerous U.S. Trademark Registrations for a family of marks that includes those set forth above, including, but not limited to, U.S. Trademark Registration Nos. 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; 4,986,346, 5,524,499, 5,504,643, 5,524,502, 5,504,642, 5,524,493, 5,411,423, 5,453,086, and 5,453,087. Copies of the registration certificates for these marks are attached as **Exhibit A**.

14.    U.S. Trademark Registrations 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; and 4,986,346 have achieved incontestability status under 15 U.S.C. § 1065.

15.    All other U.S. Trademark Registrations listed above are valid and subsisting and therefore constitute prima facie evidence of the validity of the marks set forth in these registrations and RE/MAX's exclusive right to use these marks in connection with the services set forth in these registrations.

16.    The federal registration rights and common law rights of RE/MAX in the marks described above are collectively referred to herein as the "RE/MAX Marks."

17.    RE/MAX also owns U.S. Copyright Registration No. VA-1-418-052 covering , No. VA 1-418-053 covering , and No. VAu 1-187-335 covering various photographs of the RE/MAX balloon design (collectively, the "Copyrighted Works"). Copies of the certificates of registrations are attached as **Exhibit B**.

18.    The RE/MAX Marks and Copyrighted Works are used by those in the RE/MAX Network on a variety of advertising media including office signage, property listings, property signage, directional signs, open house signs, Internet websites, business cards, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items.

19.    Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX, in the United States and worldwide.

20.     Franchisees and their sales associates ("Sales Associates") in the RE/MAX Network have used the RE/MAX Marks and Copyrighted Works in connection with representing either the buyer or the seller more than 25 million times in real estate sale transactions in the United States and worldwide, resulting in over five trillion dollars in sales volume from 1973 to the present.

21.     At any given time, there are more than 130,000 RE/MAX property listings in the United States, almost all of which display prominently one or more of the RE/MAX Marks.

22.     As a result of substantial sales and extensive advertising and promotion, the RE/MAX Marks have become widely and favorably known as identifying real estate brokerage services originating from, sponsored by, or associated with the RE/MAX Network.

23.     The public has come to associate the well-known and distinctive RE/MAX Marks with the RE/MAX Network as a source of high-quality real estate brokerage services.

**The RE/MAX Estate Properties Franchise Agreements**

24.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of assignment, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 1") to own and operate a RE/MAX real estate brokerage located at 23740 Hawthorne Boulevard, 2nd Floor, Torrance, California 90505 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit C**. Franchise Agreement 1 contained a specified term expiring August 29, 2026.

25.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise

agreement, by way of assignment, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 2") to own and operate a RE/MAX real estate brokerage located at 5 Miraleste Plaza, Rancho Palos Verdes, California 90275 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit D.** Franchise Agreement 2 contained a specified term expiring on May 27, 2025.

26.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of assignment, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 3") to own and operate a RE/MAX real estate brokerage located at 63 Malaga Cove Plaza, Palos Verdes Estates, California 90274 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit E**. Franchise Agreement 3 contained a specified term expiring on May 27, 2025

27.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of assignment, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 4") to own and operate a RE/MAX real estate brokerage located at 1901 South Catalina Avenue, Redondo Beach, California 90277 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit F**. Franchise Agreement 4 contained a specified term expiring on August 29, 2026.

28.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise

Agreement 5") to own and operate a RE/MAX real estate brokerage located at 7131 West Manchester Avenue, Los Angeles, California 90045 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit G**. Franchise Agreement 5 contained a specified term expiring on March 15, 2025.

29.    Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 6") to own and operate a RE/MAX real estate brokerage located at 402 Main Street, El Segundo, California 90245 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit H**. Franchise Agreement 6 contained a specified term expiring on March 15, 2025.

30.    Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 7") to own and operate a RE/MAX real estate brokerage located at 9454 Wilshire Boulevard, Suite 600, Beverly Hills, California 90212 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit I**. Franchise Agreement 7 contained a specified term expiring on March 15, 2025.

31.    Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 8") to own and operate a RE/MAX real estate brokerage located at 124 Washington

Boulevard, Marina del Ray, California 90292 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit J**. Franchise Agreement 8 contained a specified term expiring on March 15, 2025.

32.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 9") to own and operate a RE/MAX real estate brokerage located at 1401 Highland Avenue, Manhattan Beach, California 90266 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit K**. Franchise Agreement 9 contained a specified term expiring on March 11, 2025.

33.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 10") to own and operate a RE/MAX real estate brokerage located at 10500 West Pico Boulevard, Los Angeles, California 90064 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit L**. Franchise Agreement 10 contained a specified term expiring on March 15, 2025.

34.     Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside entered into a franchise agreement, by way of transfer, effective September 10, 2022 with RE/MAX (the "Franchise Agreement 11") to own and operate a RE/MAX real estate brokerage located at 1040 Manhattan Boulevard, Manhattan Beach, California 90266 using the RE/MAX Marks and Copyrighted Works

under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit M**. Franchise Agreement 11 contained a specified term expiring on March 15, 2025.

35.    Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders, on behalf of Defendant Beachside, executed an amendment to franchise agreement effective February 21, 2023 with RE/MAX (the "Franchise Agreement 12") to own and operate a RE/MAX real estate brokerage located at 450 Silver Spur Road, Rancho Palos Verdes, California 90275 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Estate Properties, a copy of which is attached as **Exhibit N** Franchise Agreement 12 contained a specified term expiring on February 1, 2025. (collectively with Franchise Agreements 1 through 11, the "Franchise Agreements").

36.    Throughout the term of the Franchise Agreements, Defendants were required to operate their franchises and promote and enhance the business of their office and refrain from any business practice that was injurious to RE/MAX or the goodwill associated with the RE/MAX brand. For example, Franchise Agreement 3 states:

    a.    "You specifically agree to operate the Office in accordance with the provisions of this Agreement, perform, the obligations of this Agreement, and continuously exert your best efforts to promote and enhance the business of the Office for the Term." (*Id.*, ¶ 2 (B))

    b.    "You agree that you will operate the Office continuously during the Term, and that you will not voluntarily abandon, surrender, transfer control of or lose the right to occupy the Premises." (*Id.*, ¶ 3 (B))

    c.    "You acknowledge and agree that the development and operation of the Office in accordance with the System, this Agreement and the Operations Materials is essential to preserve the reputation and high standards of quality and service of RE/MAX offices and the goodwill associated with the RE/MAX Marks." (*Id.*, ¶ 8 (B))

Ex. E, Franchise Agreement 3, ¶¶ 2(B), 3(B), & 8(B).

37.    Defendants also agreed during the term of their Franchise Agreements not to become affiliated with any non-RE/MAX real estate service businesses or any other business or enterprise offering produce or services that directly or indirectly competes with the products and services offered by RE/MAX offices, RE/MAX, LLC, or any of its affiliates. For the exact contract language, reference is made to Exhibits C-N, ¶ 5(F).

38.    Defendants agreed they would be "in material default of an essential condition of this Agreement," granting RE/MAX the right to terminate the Agreement, if, among other things, they "voluntarily abandon[ed]" or if Defendants violated the non-competition provision set forth in Section 5(F). Ex. E, Franchise Agreement 3, ¶¶ 13(B)(4) & 3(B)(14).)

39.    The Franchise Agreements provide that if the franchisee is a business entity, certain provisions of the Franchise Agreements are equally applicable to the owners of that entity (in this case, Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders). Exs. C-N, ¶ 1.

40.    Further, Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders and Defendant Mary Diane Sanders executed and delivered the Guaranties to RE/MAX under which Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders and Defendant Mary Diane Sanders personally and jointly and severally guaranteed full performance under the Franchise Agreements and agreed to be personally bound by and liable for breach of the same (the "Guaranties"). *See* Exs. C-F, p. 3; Exs. G-M, pp. 4-5; Ex. N, p. 74.

41.    Under the Guaranties, Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders and Defendant Mary Diane Sanders agreed that their joint and several liability would not be diminished or affected by a subsequent termination of the Franchise

Agreements, and that notwithstanding termination of the Franchise Agreements, provisions of the Guaranties would continue in full force and effect until satisfied in full.

42.     Certain provisions of the Franchise Agreements expressly survive their termination and remain enforceable, as discussed in more detail below.

43.     From approximately March 19, 2013 through January 7, 2025, RE/MAX Estate Properties operated several RE/MAX franchises throughout Southern California, with Defendant James Sanders, Defendant John Sanders, Defendant Sandra Sanders, and Defendant Mary Diane Sanders serving as the owners.

44.     The Franchise Agreements provide that, upon termination, Defendants must, among other de-identification obligations:

       a.     immediately and clearly distinguish their operations from RE/MAX and not directly or indirectly at any time identify any business with which they are associated as being a current or former RE/MAX office or franchisee, or otherwise hold themselves out to the public in any way as being or having been affiliated with RE/MAX;

       b.     immediately remove the RE/MAX Marks from their offices and premises, and from all advertising, marketing, and promotional materials, websites (including third-party directory listings), social media services, and other materials;

       c.     immediately notify their state real estate commission that their office is no longer in existence and that they are no longer affiliated with RE/MAX;

       d.     immediately cancel all trade, fictitious, or assumed names that contain any reference to any RE/MAX Marks; and

       e.       refrain from adopting or using in any manner, or for any purpose, the RE/MAX Marks and trade dress, including any "for sale" sign, trade dress, or identity scheme comprised of lateral elements in red and blue separated by a white element, a design comprised of a three horizontal bar design, and from the use of a hot air balloon design or a hot air balloon symbol.

Exs. C-N, ¶ 14(B) (provisions expressly applicable to Defendants).

      45.     In violation of Defendants' contractual obligations and without notice to RE/MAX, on January 7, 2025, Defendants announced to RE/MAX Estate Properties' Sales Associates that RE/MAX Estate Properties had abandoned all of its franchised RE/MAX offices and Franchise Agreements, and opened an independent, competing real estate business, Estate Properties. Such abandonment came after months of RE/MAX actively working with Defendants to cure their past due balance under the terms of the Franchise Agreements, and to renew certain of the Franchise Agreements in accordance with the renewal cadence required under the Franchise Agreements; at no time during these ongoing discussions did Defendants indicate to RE/MAX that they did not intend to renew the Franchise Agreements or that they intended to abandon their franchised RE/MAX offices.

      46.     On January 7, 2025, RE/MAX sent Defendants a Notice of Immediate Termination, pursuant to Paragraph 13(B)(4) of the Franchise Agreements, a copy of which is attached as **Exhibit O**. In the termination letter, RE/MAX specifically reminded Defendants of their contractual obligations in Paragraph 14(B) of the Franchise Agreements.

**Defendants' Breach of Contract, Counterfeiting, and Infringement**

47.     On January 7, 2025, Defendants posted on their Facebook page that they were abandoning their RE/MAX offices and opening competitor offices under the name "Estate Properties", as shown below and in the attached **Exhibit P**.



48.     Upon information and belief, Defendants did so for the express purpose of directly competing with the RE/MAX network.

49.     On January 8, 2025 and thereafter, RE/MAX learned that despite Defendant's abandonment of their RE/MAX offices and opening of competitor offices in violation of the Franchise Agreements, Defendants continue to advertise and offer their real estate and brokerage services in Southern California in connection with the RE/MAX Marks and Copyrighted Works, including use of the RE/MAX Estate Properties trade name and use of the RE/MAX Marks and

Copyrighted Works on various websites, storefront signage, property signage, and premise signage, including as set forth below and in the attached **Exhibit Q**:










 

 

50.    In addition, following termination of the Franchise Agreements, Defendants and their Sales Associates have failed to de-identify and cease using the RE/MAX Marks and Copyrighted Works. Indeed, they still maintain an online presence indicating that they are associated with, own, and/or operate a RE/MAX office. A representative example of these improper online uses following termination of the Franchise Agreements is attached hereto as **Exhibit R**. In addition, Defendants continue to maintain their RE/MAX d/b/a's with the State of

California Department of Real Estate. A true and correct copy of the State of California Department of Real Estate's records is attached hereto at **Exhibit S**.

51.     Defendants' and their Sales Associates' actions have caused, and will continue to cause, RE/MAX monetary and other damages, at a minimum, in an amount to consist of reasonable franchise royalty payments for the continued use of the RE/MAX Marks and Copyrighted Works since termination of the Franchise Agreements, as well as additional damages caused to RE/MAX as a result of Defendants' actions.

52.     Because the Franchise Agreements were terminated effective January 8, 2025, Defendants had two payment obligations. First, Defendants were required to pay RE/MAX within five days for the outstanding amounts Defendants owed under the Franchise Agreements. That amount totaled $301,983 for Outstanding FA Balance and $41,348 for Past Due Annual Dues (each as defined in the Notice of Immediate Termination, Ex. O). Second, Defendants are required to pay Lost Future Revenue to RE/MAX to compensate RE/MAX for Defendants' failure to operate their RE/MAX franchise from the early termination date to the end of the Franchise Agreements' terms. Ex. E, Franchise Agreement 3, ¶ 6(K). Under the formula agreed-upon by the parties, Lost Future Revenue owed to RE/MAX equals $1,078,590. At the time of termination, Defendants owed RE/MAX $1,421,923.

53.     On January 14, 2025, Defendants made a payment to RE/MAX of $118,086 and on January 24, 2025, Defendants made two payments to RE/MAX for $301,984 and $12,280. On February 7, 2025, Defendants made a payment $631,954. Defendants have made no further payments to RE/MAX. Defendants' continued partial payments indicate an acknowledgement of

their obligation to pay the outstanding balance owed to RE/MAX. The remaining balance owed to RE/MAX for Lost Future Revenue and Past Due Annual Dues is $357,619.

54.    Pursuant to the Franchise Agreements, RE/MAX is further entitled to liquidated damages in the amount of $500 per day beginning on the 10th day after termination, for each day during which Defendants failed to timely perform their de-identification obligations upon termination. RE/MAX is also entitled to specific performance, injunctive relief, costs, and expenses, including reasonable attorneys' fees, incurred as a result of enforcing the Franchise Agreements. *See* Exs. C-N, ¶¶14(H) & 15(G)-(H).

55.    Defendants' infringing use of the RE/MAX Marks began subsequent to RE/MAX's first use and registration of the RE/MAX Marks. In addition, Defendants began making unauthorized use of RE/MAX's Copyrighted Works well subsequent to the creation and fixation of the Works shown in RE/MAX's copyright registrations and subsequent to RE/MAX's registration of those works.

56.    Upon information and belief, Defendants and their Sales Associates will continue to commit the acts complained of in this Complaint unless enjoined.

57.    Defendants are profiting from or have profited from, or at the very least are aware of or willfully blind to, the acts of counterfeiting, infringement, and unfair competition by their Sales Associates, and are therefore contributorily liable for these acts.

58.    Upon information and belief, Defendants' acts were knowingly, deliberately, and intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to, RE/MAX's rights, for the purpose of causing confusion and/or trading on RE/MAX's reputation, thereby rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

59.    Upon information and belief, Defendants have profited and continue to profit from their unlawful acts.

60.    Defendants' infringement, counterfeiting, and breach of contract has caused and will continue to cause damages to RE/MAX, including monetary damages and damage to RE/MAX's hard-earned goodwill and reputation, as well as diminished control over the use of the RE/MAX Marks and Copyrighted Works or the quality of the services offered under the RE/MAX Marks and Copyrighted Works.

## COUNT 1
### Breach of Contract (Colorado Common Law)

61.    RE/MAX realleges the allegations contained in each of the paragraphs above.

62.    This is a claim for breach of the Franchise Agreements and Guaranties.

63.    The Franchise Agreements and Guaranties are valid and enforceable.

64.    Defendants have willfully and materially breached the Franchise Agreements, including by:

    a.    Failing to continuously exert their best efforts to promote and enhance the business of the offices throughout the terms of the Franchise Agreements;

    b.    Opening a competing real estate business during the respective terms of the Franchise Agreements;

    c.    Failing to operate their offices continuously during the terms of the Franchise Agreements, and for voluntarily abandoning them;

    d.    Improperly and without authorization using and/or trading on the name and goodwill of the RE/MAX brand other than for use with the office or franchise;

e.   Using and/or permitting Sales Associates to use, trade on, and/or display RE/MAX Marks and Copyrighted Works in a manner that may mislead or deceive consumers in any way, post termination of the Franchise Agreements;

f.   Failing to pay to RE/MAX Lost Future Revenue and all other sums due to RE/MAX under the Franchise Agreements.

65.    RE/MAX has fully performed its obligations under the Franchise Agreements.

66.    Defendants' unlawful conduct has caused and, unless restrained, will continue to cause damages and irreparable harm to RE/MAX.

67.    RE/MAX has no adequate remedy at law.

## COUNT II
**Trademark Counterfeiting in Violation of Federal Statute (15 U.S.C. § 1114)**

68.    RE/MAX realleges the allegations contained in each of the paragraphs above.

69.    This is a claim for counterfeit use of RE/MAX's federally registered Marks as depicted in Exhibit A.

70.    Defendants and their Sales Associates have used and are using in commerce spurious designations that are identical to, or substantially indistinguishable from, the RE/MAX Marks, or that contain elements that are identical to, or substantially indistinguishable from, elements of the RE/MAX Marks, in connection with services covered by registrations for the RE/MAX Marks.

71.    Defendants and their Sales Associates have used and are using these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, and sale of their services.

72.     Defendants' and their Sales Associates' use of the RE/MAX Marks to advertise and promote their real estate brokerage services was and is without the consent of RE/MAX since the date the Franchise Agreements were terminated.

73.     Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114.

74.     Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

75.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further counterfeiting the RE/MAX Marks.

76.     RE/MAX has no adequate remedy at law.

## COUNT III
**Trademark Infringement in Violation of Federal Statute (15 U.S.C. § 1114(1))**

77.     RE/MAX realleges the allegations contained in each of the paragraphs above.

78.     This is a claim for infringement of RE/MAX's federally registered Marks, as depicted in Exhibit A.

79.     Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114(1).

80.     Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

81.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further infringing the RE/MAX Marks.

82.     RE/MAX has no adequate remedy at law.

**COUNT IV**
**Unfair Competition in Violation of Federal Statute (15 U.S.C. § 1125(a))**

83.     RE/MAX realleges the allegations contained in each of the paragraphs above.

84.     This is a claim for unfair competition, arising from Defendants' and their Sales Associates' unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Defendants' and their Sales Associates' conduct constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

86.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing with RE/MAX by infringing the RE/MAX Marks.

87.     RE/MAX has no adequate remedy at law.

**COUNT V**
**Copyright Infringement in Violation of Federal Statute (17 U.S.C. § 501)**

88.     RE/MAX realleges the allegations contained in each of the paragraphs above.

89.     This is a claim for infringement of RE/MAX's Copyrighted Works, as set forth in Exhibit B, arising from Defendants' and their Sales Associates' unauthorized reproduction and distribution of RE/MAX's Copyrighted Works.

90.     RE/MAX is the sole and lawful owner of all rights, titles, and interest in and to the copyrights in the Copyrighted Works, and these copyrights are valid and subsisting and have been valid and subsisting at all times since their inception.

91.     Defendants and their Sales Associates are not authorized to use RE/MAX's Copyrighted Works in any way.

92.     Defendants and their Sales Associates willfully copied RE/MAX's original works by making or having made advertising and marketing materials that bear designs that are identical or substantially similar to RE/MAX's Copyrighted Works, including after Defendants' limited license to use such Works terminated.

93.     Defendants and their Sales Associates acted with actual or constructive knowledge of RE/MAX's rights in their Copyrighted Works, and Defendants' infringement began after RE/MAX secured its copyright registrations, such that their actions constitute willful infringement of RE/MAX's Copyrighted Works through direct infringement, contributory infringement, and/or inducement to infringe.

94.     Defendants have a bad faith intent to profit from, and have profited from, the use of RE/MAX's Copyrighted Works.

95.     As a result of Defendants' and their Sales Associates' conduct, Defendants have realized and continue to realize profits and other benefits that belong to RE/MAX, entitling RE/MAX to an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

96.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further infringing RE/MAX's Copyrighted Works.

97.     RE/MAX has no adequate remedy at law.

### Relief Sought

WHEREFORE, RE/MAX requests that this Court:

A.     Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns, and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from further breaching the Franchise Agreements, including, without limitation, by using the RE/MAX Marks and Copyrighted Works, including but not limited to use on promotional signs, premise and/or storefront signs, property signs, as an entity, corporate, or other trade name, in any domain name, and online.

B.     Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from:

i.     imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to the RE/MAX Marks;

  ii. using any unauthorized copy or colorable imitation of the RE/MAX Marks, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network or cause confusion;

  iii. using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants or their Sales Associates is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

  iv. causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Marks by unauthorized use of identical or confusingly similar marks;

  v. engaging in any other activity constituting unfair competition or infringement of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and

  vi. assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (i) – (v) above.

C. Find Defendants liable for the causes of action alleged against them in this Complaint.

D. Order Defendants to cease infringing RE/MAX's Copyrighted Works pursuant to 17 U.S.C. § 502 and order impounded all infringing items and all copies, plates,

molds, or other articles by which such items may be reproduced, pursuant to 17 U.S.C. § 503.

E.  Order Defendants and their principals, agents, servants, employees, successors, and assigns of and all those in privity, acting in concert, or in participation with Defendants who receive actual notice of said order to deliver up, or at RE/MAX's election certify the destruction of, all signs, articles, promotional, advertising, and any other printed materials of any kind bearing one or more of the RE/MAX Marks, Copyrighted Works, any mark or design confusingly similar to the RE/MAX Marks, or any design substantially similar to the Copyrighted Works.

F.  Find Defendants liable, jointly and severally, and award to RE/MAX monetary damages in an amount to be fixed by the Court in its discretion as just, including, but not limited to, all amounts due and owing under the Franchise Agreements, all of Defendants' profits or gains of any kind resulting from Defendants' willful infringement, counterfeiting, and/or acts of unfair competition, and any damages RE/MAX suffered as a result of Defendants' actions pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, said damages to be trebled pursuant to 15 U.S.C. § 1117(b), and RE/MAX's reasonable attorneys' fees, costs, and exemplary damages in view of the intentional nature of the acts complained of in this Complaint and the exceptional nature of this case, pursuant to 15 U.S.C. § 1117 (a)-(b), 17 U.S.C. § 505, Paragraph 15(H) of the Franchise Agreement, and applicable common law, state statutory law, and federal law.

G.    At RE/MAX's election at any time prior to judgment in this matter, award to RE/MAX instead of actual damages for counterfeiting, statutory damages under 15 U.S.C. § 1117(c) and instead of actual damages for copyright infringement, statutory damages under 17 U.S.C. § 504(c).

H.    Although a reasonable royalty is generally insufficient, find that one reasonable measure of damages owed to RE/MAX by Defendants for continued use of the RE/MAX Marks and Copyrighted Works after termination of the Franchise Agreements is a reasonable royalty, as determined in part by the amount of fees Defendants would have owed RE/MAX for continued use of the RE/MAX Marks and Copyrighted Works under a valid Franchise Agreement.

I.    Award RE/MAX pre- and post-judgment interest on any monetary award made part of the judgment against Defendants; and

J.    Grant to RE/MAX such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

**Jury Demand**

RE/MAX demands a trial by jury on all issues so triable.

Respectfully submitted this 7th day of February, 2025.

> */s/ John R. Posthumus*
> John R. Posthumus
> Polsinelli PC
> 1401 Lawrence Street, Suite 2300
> Denver, CO 80202
> Telephone: (303) 572-9300
> FAX: (303) 572-7883
> Email: jposthumus@polsinelli.com

Plaintiff's Address:
5075 South Syracuse Street
Denver, Colorado 80237